24-10-07 et al. MSC Mediterranean Shipping Company S.A. Petitioner v. Federal Maritime Commission and United States of America. Mr. Longstreth for the petitioner, Mr. Summers for the respondent, Mr. Reynolds for the intervener. Good morning, Your Honors. John Longstreth for Petitioner, MSC Mediterranean Shipping Company. I'd like to reserve three minutes for rebuttal. Federal Maritime Commission's grant of default judgment in this case was erroneous as a matter of law on numerous grounds. Most fundamentally, the commission did not have jurisdiction over the case because each of the claims was directly and expressly premised on the assertion that MSC had failed to meet its contractual commitments. The Shipping Act removes the commission's jurisdiction to hear such claims, even if they also state Shipping Act claims. The commission recognized this in its Cargo 1 decision and said it cannot hear claims. Where does it do that? I'm sorry? Where does it say that? Section... Even if there are statutory complaints, jurisdiction is removed if arbitration is somehow available. Where does it say that? So, it says in 46 USC 40502F with the old 8C... That's what I said. I'm sorry? F talks about... It says no jurisdiction over breach of contract claims. That's correct. But it doesn't say anything about a situation where there are also statutory claims to be raised. Right. This commission clearly has jurisdiction under the statute. We've said it in at least two or three cases that the parties cannot negotiate that away. Right. There's no question about the law in this circuit on that. The commission's jurisdiction is clear to deal with cases in which the complaint is based on statutory misdeeds. And that's exactly what this is about. And they're clearly statutory misdeeds here. Whether you think they're meritorious or not is not the point. The point is that's something that can be clearly has the authority to do it. And merely because there is the possibility of arbitration over some contract claims. It's not the question. And the commission made that clear in 1999. The commission decided the law 25 years ago. And I'm blown away by the argument you're making that well, but. Well, but 25 years ago. When you read Costco, it is absolutely clear what they're saying. And no circuit court has ever overturned the commission's determination. Well, okay. There's a lot there. And I understand where I'm starting. Three things I guess I would say about that. First of all, the issue has never been before a circuit court. That's correct. It hasn't come up. And the cases very rarely get to this court. Second, I don't think it's correct to say that we're relying on the arbitration clause to somehow divest the commission of jurisdiction. You pointed to F. That's your argument? Yes. But let's put it this way. F applies whether there's an arbitration clause or not. So I think the suggestion that somehow we're suggesting we have an agreement to divest the commission of jurisdiction. In this particular case, the statute divest of jurisdiction. It says it has no jurisdiction over breach of contract claims. And as the commission said in the case 25 years ago that you're pointing to the cargo one case, the commission very appropriately said that provision can't have any meaning unless some shipping act claims, which state shipping act claims are nonetheless outside the commission's jurisdiction because of this provision. Because if it doesn't state a shipping act claim, then it doesn't state a shipping act claim. The commission doesn't have jurisdiction over it. The question, the work that that section is doing, the old 8C4, the work that that is doing, and the commission was very explicit about this in cargo one. We cite it. We quote it. They said there have to be some cases where you state a shipping act claim, but it's nonetheless jurisdiction is divested by 8C. Otherwise, 8C is meaningless. They don't have jurisdiction to start with. So there's got to be some category of claims. So that's what cargo one said. Let me just finish this one time, please. The commission said they looked at what you're suggesting, and they understood that VNMAR could have been read that way, and they said there's a more nuanced way to read it. And if we're talking about situations where the claim is contractual, and that's all we're talking about, that's one situation. But where you have overlapping where the commission said you have to be more sophisticated to look to see whether there are statutory claims here, the commission can rise. The fact that they could also arise in arbitration does not decide the issue. That does not alone decide the issue, but there is still an analysis that needs to be made under their law. And they said specifically, I think it's on page 14 or whatever the case of the case we decided, I don't have it right in front of me, but they said absolutely specifically, we quoted it. You have to have some. I'm talking about the cargo one case. The cargo one Costco case. We believe the more appropriate test, having gone through what you just said, they then say, but we believe the more appropriate test is whether a complaint's allegations are inherently a breach of contract claim, or whether they also involve elements peculiar to the shipping act. And if they also involve elements peculiar to the shipping act, the commission says, excuse me, they surely have jurisdiction if they want to assert it. Right. But the question is, are the claims premised on, and that's their exact language, and that's the language we think that they completely ignored here, premised on... Inherently a breach of contract claim. Right. Or whether they also involve elements peculiar to the shipping act. Right. And then they go on to say when, they go on to say in that case, and we quoted the language, if in fact the claims are premised on a breach of contract, premised on a breach of contract, and these are all premised on a breach of contract, you read through the complaint over and over and over again, they go back to the breach of contract. No, you know, you better read the whole page. You're simply wrong, because that's not what they're saying. In contrast, where the alleged violation raises issues beyond contractual obligations, the commission will likely presume, unless the facts as proven do not support such a claim, that the matter is appropriately before the agency. That's what they decided 25 years ago. Right. And we believe... And we have said in at least a couple of cases, the mere fact that arbitration is possible does not divest the commission of its statutory authority. And this is a scheme that's well understood in that law. The NLRB is a perfect example. Right. There are all kinds of contractual claims, and we've seen those fights over the years, where the board may not take authority, but they may have authority if there's an underlying unfair labor practice involved as well. That's what the commission cleaned up 25 years ago. No, no, well, I'm sorry, I guess we're just disagreeing on this. And let me explain to you where I think the distinction is between what we're saying and what you're saying is. There is no question that we cannot divest the commission of its regulatory authority. So for example, it has regulatory authority over these contracts. And for example, the case that Judge Wilkinson... Judge Wilkins heard two weeks ago about detention and demerge claims. There is no question that if a contract comes before the commission, and the question is, is this contract consistent with the Shipping Act? In the detention and demerge claims, for example, the question is, can you charge when they hold the equipment too long? And the commission is saying, in that case, we don't care what the contract says. Your contract, in your words, Judge Edward, your contract cannot divest us of jurisdiction to determine what's reasonable, what's not reasonable. So we still have that regulatory authority, but that's not this case. This case is not saying there was something wrong with the contract. This case is saying over and over and over again, probably 20 times in the amended complaint, we failed to honor our service contracts. We failed to provide... Let me ask you a question, Director. Are you contending that if there are facts alleged that if proven, could prove both a breach of contract and a violation of some provision of the Shipping Act, then necessarily that complaint fails the Cargo I test? Not at all, Your Honor. And I think that's a very important distinction to make. You can have situations where there's an overlap, as Cargo I says. The question that's critical, we think, is do you have to prove a breach of contract in order to make the Shipping Act claim? In other words, does the commission, which is divested of jurisdiction to hear breach of contract claims under this section, whether we have an arbitration clause or not, it's divested that jurisdiction, it can't decide breach of contract claims. So then the question becomes, you've got a Shipping Act claim. And sure, they've stated Shipping Act claims. All of their Shipping Act claims are basically, take their unreasonable practices claim. Their unreasonable practice claim is we had a practice of breaching our contract. Their failure to comply with an agreement is, well, you had a service contract, you didn't comply with it. Every single one of their claims is absolutely premised on a breach of contract. And that's the distinction. Yes, maybe you can bring a breach of contract claim, you can bring a Shipping Act claim. But if the Shipping Act claim, and if you allege these extra factors that aren't premised, those extra factors have to be not premised on the breach of contract. Excuse me. We don't get the big money, but we do the ALJ found and what the FMC adopted as far as reasoning was that there was a systemic nature of the alleged violations that went beyond the typical breach of contract claim. Because the alleged was failure to maintain or provide booking reports systematically preferring higher price cargo and coercing surcharges and that it also related to other shippers and not just MSC. So isn't that beyond proving just a breach of contract? Well, in the Cargo 1 case, there were those allegations that there was an allocation scheme separate on the contract. And that's what's different in the Cargo 1 case, which is that in the Cargo 1 case, they did not come in and say these allocations violate the contract. Here, time and time again, they're saying the allegations violate the contract. And that is the basis of their claim that we had the right under the contract to have this cargo carried. You, MSC, did not carry this cargo. Whereas in Cargo 1, they were talking about there should be some kind of reasonable allocation scheme under the Shipping Act. So that's what made that, in that case, a case that went beyond the breach of contract. Here, all the allegations, and they come back to it time and time again, they come back to it and say, here is a breach of contract. You failed on your service contract commitments. You conditioned compliance with it, all the way through it. Let's just focus it on, for example, counts three and four, which assert unfair and justly discriminatory practice or undue or unreasonable advantage. And I understand you have a separate merit defense on those. But just on the Cargo 1 jurisdictional question, those obligations to conduct business in a way that is not unfair and just or not giving undue or unreasonable advantage, those are statutory overlays on any contractual undertaking. And so is it your view that under Cargo 1, the Commission locks jurisdiction to hear those kinds of claims? Our claim is that, yeah, that you have to look at what's being alleged. This sort of, this broad brush notion that just because we have asserted discrimination, in other words, parroted the language of the statute, that's not enough because you have to look at whether those claims are nonetheless inherently contractual. And they're inherently contractual if they're premised on a breach of contract. Their discrimination claim here is that you breached our contract and you may not have breached other contracts. That's their discrimination claim. And so our argument is that that, again, is in the Commission's words in Cargo 1, premised on a breach of contract because that's what they're alleging. In other words- But in that case, so let me back up. Sure. Stepping away from the particular allegations in this complaint, I assume that you would agree that under Cargo 1, it's possible for a carrier's conduct to violate the provisions barring discrimination or disadvantageous treatment, but not the service contract? Yeah. It's possible for both to be the case. It's possible for it to- I'm just saying it's possible that you could have a claim under those provisions of the statute that didn't mention the contract, but was just about discrimination or disadvantageous treatment, right? Yeah. You could certainly have allegations that did not depend on breach of contract. And those allegations could either be or not be a breach of contract. That was my answer to Judge Wilkins' question. I apologize again for talking over him, but that was my answer to Judge Wilkins' question, which is that if in fact you can make the Shipping Act claim without also proving a breach of contract claim, then it's clearly within the commission's jurisdiction and there's all kinds of cases that would be in the jurisdiction. We're talking about the situation. In those cases like this one, where part of the allegations does include facts amounting to the breach, the breach becomes sort of a factual issue rather than a legal fact, rather than the claim. The claim is the claim as outlined in the statute. And the only provision that Cargo 1 really seems to kind of kick to the curb as outside of the commission's jurisdiction is there's that provision that is currently, I think it's 411.04. A2. A2A. Yeah, A2A. Yeah, failure to comply with a term of file service contract. Which basically says failure to comply with a service contract amounts to a violation of the Cargo 1 because Cargo 1 says, well, even though the commission has jurisdiction over violations of the Act, it doesn't have jurisdiction. Right. And that's a good example. And that's a good example. 40502F over that claim. And I guess one question is why don't we read Cargo 1 as only resolving the apparent tension between those two provisions and leaving all the other statutory obligations subject to the commission's jurisdiction? Okay. And two questions on that. First of all, I think it's important to recognize in Cargo 1, the commission did not hold that those other provisions, the discrimination provision, and there was another provision, I can't remember, 60 or something, but we'll talk about the discrimination provisions. It did not hold that those discrimination provisions were in the commission's jurisdiction, even in the Cargo 1 case. It said they were presumptively in the commission's jurisdiction. Presumptively because unlike A2, which specifically says failure to comply with an agreement, in those cases, there are other provisions. But even there, when they sent it back to the administrative law judge in Cargo 1, the case settled after it was sent back. So they never got to that. They said, look, we're going to presume that these A2 claims, failure to comply with a contract, we're going to presume that those are in the jurisdiction. On those discrimination claims, we're going to presume they're not in the jurisdiction, but they did not specifically hold it. It was a presumption in both of those cases. Okay. I made up. The A2 claims, we presume are outside the jurisdiction. The discrimination, we presume are in the discrimination. And I must have misspoken because two people say I did. But anyway, so I think even in that case, it's important to recognize they did not say, even in Cargo 1, that just because you state a discrimination claim, you can't also have that claim ousted of jurisdiction. Really didn't speak to it either way, did it? Well, it said it was a presumption. And I guess what we're saying in this case is in this case where you have a complaint that over and over and over again talks about failure to honor service contracts. Look at the amended complaint paragraphs. It's at 129 to 154 of the joint appendix. Paragraphs 7 to 9, failure to honor service contracts, commitments, failure to provide space at contracted rate, conditioning compliant with credits. 19 to 21, all they're talking about is the service contracts with respect to the service contracts and negotiating service contracts. Let's look at, I don't know if you have it in front of you, KA 147 where there's a list of allegations of respondents unjust and unreasonable practice. You're at paragraph 96. Okay, I've got it. So like in paragraph 98, they allege that basically your client was demanding that accounts have accepted this PSS surcharge instead of performing under service contracts. And then similar allegation in paragraph 100. Help me understand this. The way I read your brief and your argument is that you say that that's still inherently a breach of contract claim because that's part of it. The allegation is that instead of honoring our service contract with them, they're being forced to pay these other surcharges or ship under the stock market. And so it's still really inherently a breach of contract. Is that a fair articulation of your argument? I think it is your honor. So what would be a case where someone reflects this presumption under cargo one? The one example you said is, well, if the contract itself violates the act, but there's got to be something more than that. Well, I mean, and I think this is a good example because I think this is a case where because of the nature of the allegations in this case, so when you're looking at paragraphs 98 to 100 on peak season surcharges, when you go back to the factual allegations in the complaint, which start at J139, 140, this is where they're talking about attempts to coerce extra contractual surcharges, you know, go to 51. They sought to induce complainant to agree to pay surcharges in order to obtain previously contracted space. 53, the service contracts do not permit or responded to hold or fail to withhold contracted space. 54, practice of failing to provide contracted space. So I think this is a case where the commission did say in cargo one that we are going to presume these discrimination claims are within the commission's jurisdiction, but that presumption can be rebutted. It seems to me it's absolutely been rebutted in this case because those surcharge claims are all directly based on the allegation that we were breaching our contract in order to coerce these surcharges. So it does fall within that category of claims that cargo one left itself left open for HC to do some work. So my sense is that the proposition that cargo one limits the commission's jurisdiction for statutory claims other than claims under A2A is a novel reading of cargo one. Is there any decision that reflects that? Well, there is. And we pointed this out. There's the global link decision, which was a 2014 ALJ decision. And that's one that was a very similar case to this one, where the allegation was that the carrier had failed to carry a cargo under a minimum, it's an MQC, minimum quantity commitment. The case is global link. And what's interesting about it is, and by the way, this has come up very infrequently. There's some recent cases which we think suffered the same problem this does, that they don't really do the analysis required. But in the global link case, they specifically, the ALJ and the guy that didn't get up to the commission, specifically said that this is within HC, this is within the jurisdictional limitation, dismiss the case. We cited that case to the ALJ, the ALJ ignored it. We cited that case to the commission, the commission ignored it. This is precedent on point, it's not commission precedent, it's ALJ precedent. And finally, the commission on their brief said, well, this is different because there are a lot of allegations. We've got hundreds of pages, there's always verbiage in there. But our view is that verbiage is time and time again, dependent on a claim of breach of contract. And that's the- What does it mean, cargo one says this, and the anchor shipping decision by the commission says that we read cargo one, you boil it down is we try to determine whether there are elements peculiar to the shipping. That's how you know when the commission has jurisdiction, even if there's also breach of contract elements. What do you think, how do we know that when we see it, an element peculiar to the shipping? I think, so there clearly has to be something more than breach of contract for the commission to have jurisdiction. And I think that's what they're saying here. I think how we know it when we see it, is there a test? I think really in our view, are those peculiar elements premised on a breach of contract? Would they require the commission to decide a breach of contract claim that's been taken out of their jurisdiction by the act? And I think that's how you know it. And I think the premised upon language in cargo one, I mean, we keep hanging our hat on that. And I think it's because it fits in well with this test. Are the claims, even if they allege these peculiar elements, are those peculiar elements dependent upon, premised upon showing a breach of contract? In cargo one, they also say, I'm sorry. Well, I just wanted to ask one follow up. Go ahead. So you just heard us, you know, observed us hearing an employment case. Yes. But just to use that like as an analogy as to why I'm just trying to help you understand why I'm having little problems with your test. So let's suppose you have an employee and there's an employment contract that says, you know, your job duties are to perform these 10 tasks. And when we'll pay you, you know, X dollars a year in salary. And even though the employee performs all 10 of those tasks, he's fired. But he also says, I was fired because of race and disability or some other protected activity. And there's a Title VII or ADA or some other sort of claim. To prove the discrimination, you still want to prove the breach of contract, so to speak, in that, you know, you said that if I do these 10 things, then I'm a perfectly fine employee. And I have evidence that I did those 10 things, but nonetheless, you fired me. It can't be the case that just because we would look at that and say, well, there's a contract there and prove the breach of contract. It's nothing really more there. There's no discrimination case there. I mean, there could be both based on the contract and the facts. And so I guess that's why I'm just having problems trying to figure out what Cargo I and anchor shipping means in saying that something, there's an element peculiar to the Shipping Act and you say that the way that we are to find that is just, well, in order to prove the Shipping Act violation, they would, they can't also rely on the fact that what was done violates the contract. Well, I don't think exactly your honor, because I think I understand your point and it's a good one. It is true. And I think judge Pillard said this as well, that, you know, the facts that underlie the breach of contract might also be facts relevant to, you know, a discrimination claim. But the question is, do you actually have to find a breach of contract? So for example, you could hold in your example, I think judge Wilkins that, you know, based on these facts, based on these facts that makes discrimination, makes out a discrimination claim, but, you know, those facts can be considered, but you don't have to find a breach of contract. You can find a breach of contract, but you don't have to find a breach of contract in that case, because it's a separate, it's a separate case. In this particular case, even in my hypothetical, wouldn't it be logical for the court to say, well, it seems to be evidence of discrimination that they're not even abiding by their contract? Exactly. That's what we do in the NLRA all the time. Yeah. It's common. And I wanted to add to my colleagues, I'd like to add this so you can weave it into your answer. Yeah. In cargo one, keep reading past the pages we've been focusing on. It says on the other hand, we find the alleged violation involving unfair and justly discriminatory practices, undue unreasonable preferences, undue unreasonable prejudice or disadvantage, and just and reasonable regulations and practices are inherently related to the prohibitions and therefore appropriately brought before the commission. There's no question about what the commission was saying in cargo one. There are situations like the one that they list specifically that clearly would involve the commission looking to see whether something is amiss in the way you were dealing with stuff under the contract to make the statutory determination. And they made it very clear they were attaining jurisdiction. They did distinguish those, but as I will say, if you look at the order, the order did in fact send it back to say, nonetheless, you can still have some circumstances. Send it back for the commission to consider. Send it back to the ALJ to consider. Right. Which was the commission sending it back to the ALJ. So the implication of that is I take that to be opposite from the implication you're drawing, which is that they looked at those and said the fact that there may be a contract element or fact embedded in that doesn't take it out from under our jurisdiction. They are inherently related to the shipping acts prohibition and are therefore appropriately brought before the commission. That's their whole. Okay. Well, again, the order was a little bit different, but I take your point. I have sort of a question from the other side is about cargo one. So your premise is that cargo one is what we're applying. You're not Yeah. Our premise is that they, yeah. I mean, our premise is that they don't match cargo one. It's true that, you know, particularly in the world we're living in now that, you know, this court doesn't necessarily have to accept cargo one. But again, we think if you read the premised upon a contract breach language in cargo one properly, this case falls well with that. That I have a cargo one. I take it that under your interpretation of the commission's jurisdiction there are no claims that arise under A2A, 41104 A2A, which is a provision that renders basically renders contract claims. Right. Statutory violations. Right. In your view, nothing under that provision is within the commission's. Oh, no, that's not true. No, so the section is failure to comply with a agreement on file of commission. So, for example, that would cover unfiled agreements. And that's really, it would cover under file. So, in other words, not filed. Right. If it's not filed. So that, so there'd be that whole series of cases. And that provision really goes back to it. It's sort of an anti-rebating, you know, anti-rape discrimination provision. Remember this all started when almost all carriage was under tariff and even service contracts before the act was amended in 98. That's the point of our merits based on count three, you know, service contracts had to be filed and you had to offer the terms. So it was a very much a tariff based non-discriminatory rate system. So 2A, really a lot of the work that 2A does is to make sure that there's no non-discriminatory carriage in there. What the commission is saying in cargo one though is, yes, there's that whole category of cases, but when the claim is, when the claim of a 2A violation is, you did not comply with the terms of a contract under that was filed with us, that becomes linguistically and logically almost indistinguishable from you breach your contract. You did not comply with a filed service contract. You breached the service contract. The overlap is, and I think that's what the commission is saying. In light of the language I just read to you that the commission states, if you're talking about unfair, unjustly discriminatory practices, undue or unreasonable preferences, undue or unreasonable prejudice or disadvantage, these are all emanating from the enforcement of the shipping of the contract. Nevertheless, the commission says it's within their authority. These are claims. I just read you that. Yeah, no, we've had that discussion. We're talking about a different provision though. We're talking about 2A. We're talking about the unfiled agreements. And that's a distinction that the commission- We're talking about whether or not there are claims here. Please don't be impatient. We're the ones who have to decide it. You can ignore it all you want, or you can just stop the case if you want. You want to be heard? Well, then you got to hear our questions. You know, it's getting a little annoying, all these antics. We're talking about whether or not there are claims here that should survive because they raise shipping act, alleged shipping act violation. That's what we're talking about, including the most recent one, including the ones I just read to you at the end of cargo one, where the commission has answered what you're claiming and said you're wrong. These are claims that involve alleged shipping act violations and they're appropriately brought before the commission. Right. Yeah. No, I understand that. I thought we were talking about though, A2, which in cargo one itself had, cargo one itself had distinguished the A2 cases from the discrimination cases you're talking to. So again, again, I'm sorry, but I think it is a pretty clear distinction between those two. And I was trying to talk about A2. So I have a question just to shift gears a little bit about the discovery dispute. Yeah. Am I right that there was a certain amount of discovery material that you produced voluntarily in the case? Yes. And you're not suggesting, are you, that that production violated article 271? No, that's the whole distinction. The distinction is whether it's production compelled by an order or production that was done voluntarily. That was a distinction that we made very clearly. It's made in the Swiss legal opinions that were. So in your view, would it be, would it allow you to sidestep the 271 jeopardy if you said, look, ALJ, I actually don't believe that you have authority or that I can respond to your order to compel, but I don't want to get hung up in that for years. I will voluntarily provide. I will voluntarily provide with the order. I'm just, I'm asking you not to agree to that, asking a hypothetical legal question to prove the coherence of your position. Sure. And the question is, could you either before the ALJ entered this order or saying, I resist that as a command, but as, you know, counsel, I will recommend that my client voluntarily comply. Is that something that in your view would nonetheless leave you in jeopardy of criminal prosecution under 271? That was our view. And that was the opinion that we got from our Swiss counsel. That you could not voluntarily agree to give it, basically under protest. Okay. We, we are not doing this because the court, the ALJ has asked us to do this. We are doing that as a conciliatory effort to try to advance the resolution of this case. Yeah. We would only be doing it because of the, we would only be doing that because of the commission, because of the commission's order. And so I don't, I guess the, the answer to the question is, I don't know if that specific hypothetical was presented to our Swiss counsel. It was not something that they volunteered. I mean, they felt that they had let's put it this way. I think that would raise a question because the only reason we were doing that would be because of a compulsion of the order. The Swiss counsel. That's really up to you and your client. Well, I, I just don't know what this, I don't know what the Swiss, I don't know what the Swiss would say to that because it would be, it seems to me it would be so obvious that the only reason we were doing that was because of the compulsion of the order that, that it would, it would raise, I think it just raises the same question. Okay. And again, there was a way to solve. I hear you've sought advice and you've got advice and, and you think this would, you couldn't, it wouldn't materially change the fact on which that advice was premise to do what my hypothetical suggested. Have you at any point in the record of this litigation, it may be there, but I don't have it at my fingertips. Have you identified the specific types of documents, categories of documents or, or information held in Switzerland that is particularly problematic in terms of, I mean, the Swiss law, the business secrecy laws are there for certain purposes and obviously certain information is more sensitive against disclosure than other information. Can you give us some sense of what the information is that you think would really alert criminal authority? Yeah. I think one thing that's very probably most clearly within it is financial information. So they sought financial information, a wide variety of financial information about the business, profit loss, that sort of thing. About your clients? Our clients. Yes. And it's privately held business. It's, it's kept very confidential. And I think as your honors question suggests, the Swiss tend to be pretty and the Swiss tend to be pretty sensitive about financial information. We didn't think that information was particularly relevant. As a matter of fact, on the amended complaint, we actually removed a defense that was cited by the judge to say that that information should be turned over. But that information is held in Switzerland, closely guarded. And we think that- Which of the discovery requests is that responsive to? There was a, well, there was a discovery request where they, which of the defenses you mean? The discovery request asked for the financial information and that was- Is that financial information to be a little bit more granular? It was profit and loss information, I think was in there. I'd have to look back for the specifics. I've just thought about it. All Mediterranean profit and loss? Yes. Yeah, that's right. Yeah. They're profit and loss for the whole year. And- The whole world for the whole year. Correct. Correct. And that's all held in Switzerland. That's very closely guarded. It's a privately held company. You can't find that information anywhere. And so- And what was your understanding of what the ALJ thought that was legally relevant to? So the argument was made by our litigation opponent that that was relevant to a force majeure. And they never really explained, at least that I could tell, how it was relevant to that. But I suppose the argument was if we were arguing force majeure, we were arguing we couldn't do something. And the fact that we made a lot of money would kind of show that we could do that. That's- I guess that was the argument. It seemed like a little bit of a stretch. The judge at that point just basically said, well, they say it's relevant to force majeure. I say it's relevant to force majeure. She didn't really explain it, all that. So when they filed the amended complaint, we took the force majeure out of the case to try to resolve that issue because that's very, very sensitive information. I have what I think is an easy question for you. There's this back and forth in the briefing about the Hague Convention versus the Intergovernmental Consultation- Right, exactly. Under the statute. You don't dispute that the Hague Convention is an acceptable substitute for the statutory intervention. Absolutely. That was our argument all along. Right. Well, you appear to suddenly argue that the statutory process is obligatory. And you have, as you said, argued all along that the Hague Convention process- Right, that that would be a substitute for it, yes. Did you take any time to appeal the Geneva Court's determination? Is there an appeal available from that? We were told that it was not because it didn't really order us to do anything. In other words, there was no compulsion from the Geneva Court's ruling. It didn't order us to turn over any documents. It just said Hague was not available. But again, it denied you the relief you wanted, which is-  To say that, I mean, so under Swiss law, that's not an appealable order? That was, again, that was the advice we got from Swiss counsel that the best way to handle it would be to fix it with the, and I'm trying not to use fix it in the sense, you know, the administrative law judge kind of thought we went around the court and all, but basically to have the problem resolved by the Federal Office of Justice and the Swiss Minister of Justice. And ultimately, we were successful in doing that. It's just at that point, it was too late and the administrative law judge had moved on and decided that she didn't want to spend any more time on the Hague Convention. So your position is not that it's not appealable, but that the strategy decision recommended- No, I think- By Swiss counsel was that you'd be better off going to the executive. No, I'm sorry if I suggested that. I didn't mean to. The suggestion we had from them was that it wasn't in fact appealable because they had not ordered us to do anything, the trial court, the court of first instance had not ordered us to do anything. They had just said these provisions were unavailable. And so there, and again, going back to it, the Swiss counsel had said that really this request should have been directed to the Federal Office of Justice to start with. And that basically if we had done that, if that had been done to start with, we wouldn't have had this erroneous answer. And so the better thing to do was to do that. But I do think there was, and I don't think, I'm being a little cautious because I don't think this was stated in written advice from them, but my understanding was that this was a preferred course of action, not only because it would work, which in fact it did, ultimately did, but that because there was a question about appealability of the ruling. And then also appealability of the ruling, again, would have taken, appeals take time and Swiss counsel said this could be resolved quite quickly if we went back to the Federal Office of Justice, which we did. So. I just have a couple more questions. Sure. You argue that the default judgment was abuse of discretion. And I guess I'm curious more particularly where you thought the ALJ crossed over from making rulings that you disagree with to abusing her discretion. Well, two things. Well, first of all, in addition to abuse of discretion, we thought it was a legal error because the consultations, which were statutorily required, weren't conducted properly. And that both sides agreed after the Swiss trial court came back, both sides agreed that consultation should go forward. It was the judge herself, sua sponte, who decided that she wasn't going to do that. So I think that itself was, I mean, a legal error or an abuse of discretion. It's kind of the same thing. But then I think also it was abuse of discretion because there really wasn't any effort to look at the discovery we'd provided, how that related to the case, issues in the case. There was a listing of the information we didn't provide, which of course, included, for example, this financial information, which was, we thought, no longer relevant because we'd removed the defense that required that. Was there no other information in that list that you thought was relevant? I'm sorry. No, you've argued that you didn't think any of the information. Well, that's why we opposed the motion. Well, that's why we opposed the motion to compel. Yeah. And was all of that information that would violate secrecy law or is it just more of the procedural thing that you have to get Swiss authorities on board if any of the information, even if it's your own information, is divulged? The act of production. The act of ordering that production from Switzerland would be considered a violation of Swiss law under the advice that we got. Yes, because we'd be- So the ALJ abused her discretion in not going a second time through a hate convention request. What if the second one was denied? Would she abuse her discretion in not going through it a third time? Well, I can understand that. I think our point is if, in fact, it had been denied, there does need to be some process. I guess it would depend on the grounds in which it was denied because if it were denied on the grounds, and this was an error that the commission made, by the way, in discussing what had happened in Switzerland, if it had been denied on the grounds that it was unnecessary and it was okay for us to produce the documents, then, of course, we would have produced the documents. We wouldn't have had to go through it again. One of the problems we had here is when that request was denied, the commission said, well, because the request was denied, that means further consultations are necessary. That wasn't the case at all. Because the request was denied, it meant we didn't have the protections we needed under 271. Therefore, some other means of consultation was required, and the other side agreed on that. I think that was just an error by the commission. Again, I don't know if they call it error of law, abuse of discretion, but they basically held that, well, we had no reason left to withhold that information because they held that the consultations were unnecessary. That's not at all the case. They said the Hague, to go back to your example about how we considered the Hague to be a substitute for consultation, if Hague had been a substitute for consultation, that would have been fine. We could have gone ahead. Once Hague was not a for consultation, then we had to have some other basis for it. Actually, the way you know the commission was wrong that the consultations were not unnecessary, we went back, the Swiss Council went back, and in addition to asking for the Hague procedures, they said, can we get a waiver of 271? They said no, because Hague's availed. Basically, it's your view that, this is a little bit more nuanced than what I gleaned from your brief, you're saying that had the Geneva Court ruled, not that the commission, the administrative proceeding is not covered by Hague, which is what it did find, but that you don't need it, and that that would match up better with the potential exposure under 271, and that's why you're now arguing about the statutory consultation requirement, because you're pointing that the Geneva Court's order is sort of neither here nor there, as it can't fulfill the consultation requirement. We didn't give you a yes or no answer on the question that the statute is anticipating the answer. I think that answers my next, my final question to you right now, which is, how do we decide when an ALJ or a district court judge has to disregard a ruling of a foreign court based on contrary legal conclusions from that country's executive branch or private legal experts? Like, how do we, sitting here in Washington, D.C., and not, you know, having Swiss lawyers at our elbow figure that out? I guess we have two answers to that question. First of all, first of all, I don't think you have to in this case, because I think in this case, nobody had to decide. Nobody had to decide who was right. We had a situation where we felt we needed the protections of the Hague procedures. The Swiss Minister of Justice, which is about as high as you can go in the Swiss government, said that those procedures were available. And so had the ALJ simply accepted that, we could have gone forward. I guess the second question is, and I think we made this point as well, that one of the points of the consultation procedures is if you go government to government, the Swiss government can decide that, not an ALJ or the D.C. Circuit or any of these other people. The point of consultations is you let the Swiss decide the Swiss issues, rather than having an ALJ decide the Swiss issues. I thought that ultimately the ALJ made a finding that the commission, you know, affirmed or adopted that there wasn't really a reasonable fear of criminal prosecution pursuant to Article 2 or violation of Article 271, because the evidence that the ALJ had before it from the opinions of your Swiss counsel, etc., the instances where there had been criminal prosecution weren't anything close to these sorts of disclosures. It was, you know, disclosing information of prosecutors, not parties to a case, etc. And so the ALJ found that you hadn't really demonstrated real fear of criminal prosecution, and the commission adopted that finding. So it kind of makes all of this discussion about consultations and Hague, etc., irrelevant in their view. Isn't that the record that we have? And if that is the record, then where is the abuse of discretion in that? Two answers, I guess, to that. First of all, the ALJ did purport to read, I guess, the EFG case, the Southern District of New York case, as saying, well, this is all unnecessary because this EFG case says it's unnecessary. The commission did not adopt that ruling, didn't discuss any of it. The commission said that the procedures of Hague were unnecessary because of the Geneva Court's ruling, not because of the reasoning that the ALJ had about reading the Southern District case. So I think, first of all, it's just incorrect that the commission adopted that ruling. Second, we had evidence in the record from Swiss counsel. They specifically discussed the EFG case. They specifically discussed that. They discussed why that was not the proper reading of Swiss law. And that's, I think, JA 150. I think maybe it's where we had that. I don't know, 250, whatever it is. Going back to Phil Pillard's question, the ALJ disagreed with that, obviously. How are we supposed to review whether the ALJ used their discretion by disagreeing with what the advice or recommendation was from Swiss counsel? Or can I jump in and just dial onto that? I actually think it's a little bit harder for you because it's not disagreeing with what they've said, but it doesn't meet your burden to show that you can't comply because of that exposure, which is a slightly different question. You have to persuade that you can't comply. And even if, you know, ultimately your counsel is she wasn't persuaded. She didn't feel like she had enough. Right. And I think the answer to both those questions, I hope it's the same answer to both, is that the whole point of the consultation requirement is that she isn't in that position of deciding Swiss law and having decided. You weren't in the position of having to review her Swiss law determination, that you go to the Swiss and either go through the Hague procedures, which ultimately would have been successful, we found out when we went to the right office. But that if you would accept that, you have a government to government consultation and you go to the Swiss government and the Swiss government decides what that's going to be. I think the whole problem we have here, I think all of the problems you're raising go away if you follow the consultation procedures. I see this actually really just as a practical matter. I've never done a case before under this, you know, reviewing this commission and under this statute. But it sounds like what you're saying is that every time any Swiss person or entity is involved in civil litigation in, let's just say the United States, because I know our discovery regime is distinctive compared to, let's say, civil law any time discovery is sought, that you have to do Hague Convention or letters rogatory or some government to government diplomatic process in order for that case to move forward to some extent. Is that true? And if so, why are there not a lot of citations? Okay. Two answers, I guess, to that question. First of all, that was the question that was presented in the 1987 Supreme Court case. I think it was there. Yeah. Society or whatever it is, some long foreign name. But in any event, and I think the Supreme Court recognizing your concerns that we're not going to say it's required in every case. We are going to say there's a comedy analysis that has to be done, a five-factor comedy analysis. And that five-factor comedy analysis is going to have to be done. And that I think is what, and nothing like that was done in this case. So yes, certainly there is some power in the federal court. They don't have to be bound by all of this. That's what the Supreme Court said, but they're supposed to at least give some kind of weight to it. Second, we're talking here about the Shipping Act where there is a specific consultation requirement. And so that's the, that I think is the difference. In other words, I think the consultation requirement, and I think the Shipping Act of 1984, which put this in, was passed, I think, before the 87 law. But I think the Shipping Act really decides that issue that the Supreme Court said, no, you don't have to use it in every case. Under the Shipping Act, you do have to use it when it's alleged. They basically decided that case the other way statutorily. So Congress has made that decision. And I think it's because we have, it's an international regime. There was, I mean, there's a long history to this too, because there was a lot of... All right. Yeah. There's a long history to this too. There were blocking statutes that led to antitrust, criminal prosecutions led to all of it. But the answer is under the Shipping Act regime, yes, that is the case. Now, maybe if there's frivolous allegations or something, but we felt we were far beyond frivolity here. We had this opinions of Swiss counsel very carefully done and very carefully addressed what the ALJ ultimately cited and the commission about it. If we have anything else at this point, I very much appreciate the patience of the panel. Thank you. Okay. We'll hear now from the commission from Mr. Summers. Good morning. The first thing I'd like to talk about is that the commission did in fact rely on the district court cases that were just discussed that the ALJ relied on in showing that Article 271 does not present a credible fear of criminal prosecution where the sanction involved in proceeding in the United States does not involve the potential for a criminal penalty, which was the case here because it's administered... Is it a concern that there might be prosecution in Switzerland? That's right. But the basis for the courts, the district court rulings that the ALJ identified and the commission also relied on was whether there was a potential for a criminal sanction in the United States or in the foreign nation. That's the way we read those cases. So I think that was something the commission also relied on in addition to a lack of factual support for the claim. Even though now we've heard about the documents in Switzerland, there's no specifically identified documents and materials responsive to the 14 categories of materials that the administrative law judge went through and identified where they had stopped producing or failed to produce any further materials. So the factual basis was not met here as well. And that, I think, is the doomsday claim as it would under a hate evidence convention claim where the federal courts say you have to demonstrate a need for the use of these procedures rather than ordinary US civil discovery procedures. Here, they didn't make that showing. In fact... Well, I think they think they've made that showing in gross, that there is no page of what they have in Switzerland. Actually, it doesn't even matter whether it's in Switzerland. It could be in the US. It could be in, you know, who knows where, next door. And I think their position is once a governmentally empowered forum says you must produce, that they are in criminal jeopardy under 271 of Swiss law because Swiss sovereigns are the only ones who can say that another sovereign can transfer information. So I think they don't think it matters what information they are withholding. That may be correct. Our understanding of 271 is that it applies to things produced from Switzerland or in any event from outside the United States. In this case, Mediterranean, the largest container shipping company in the world, has a massive US presence. They have more than 1,000 employees here. They have a number of ports and offices. And it's important to remember as well, the activity at issue was shipments from China to the West Coast of the United States. So it's true that, as I think Judge Goulart, you were referring to, why isn't this a bigger... If this was really necessary, why isn't this a bigger thing? I mean, the Shipping Act of 1984 has been in place for more than 40 years, and yet there has been virtually none of this until the last couple of years. No claims like this that I'm aware of. Instead, parties like Mediterranean and other major carriers have been able to comply with their discovery requirements without the use of these procedures, at least relevant to US-bound or US-related ocean-bound shipping. Your answer... Did you get what you wanted to say? I have four things I'd like to raise with you, if I can. I'd like to know whether, with respect to each one of these four things, they constituted the basis of the complaint under the act that was being pursued by the commission in this case. First is unfair or unjustly discriminatory practices. The second is undue or unreasonable preferences. The third is undue or unreasonable prejudice or disadvantage, then unjust and unreasonable regulation and practices. Could you go through each one and tell me whether it is your understanding that, with respect to each one of those, those form the basis for the complaint in this case under the Shipping Act? If so, what section of the act are we talking about? First one was unfair or unjustly discriminatory practices. Yes, Your Honor. I believe those were all part of the claims that MCS, the complainant, the administrative case made. I believe you may be talking about section 4114A5 and 41104A9 because I believe, although I may have missed some of the phrases you had, I believe those include the language that you cited. I think those are two of the five claims that MCS made in the underlying matter. And so, yes, I think those were at issue. I also think it's important to note here, maybe, if I can, that it would only be necessary to sustain jurisdiction and claim in order to sustain the decision. I understand, given the long argument that we heard previously, I thought this was pretty straightforward and I'd like to make it clear now, at least for the record, that these are matters that were clearly parts of the charges that were brought under the Shipping Act. And I just wanted to hear your position on it since there's been some discussion. These are, as you may recognize, precisely the matters that the Commission cited in CARB-01 in saying that these are matters that arise under the Shipping Act and clearly within the jurisdiction. And so, if we have those claims here, we clearly have jurisdiction. We think so, Your Honor. That's right. And for many other reasons as well, because there are the other claims and some elements of those claims depend on, in fact, explicitly relate to performance of service contracts. So, it should be no surprise that there's an intertwining, as I believe Anchor Shipping put it, or an overlap with contract related claims. Others, like 41102C, do not necessarily relate to a contract at all, but they're broader claims about the just and reasonable handling of cargo. There too, MCS made allegations, specific actual allegations that don't depend on a contract. They don't a breach of contract. They went well beyond, and in fact, they didn't make a breach of contract claim, nor did they simply parrot elements of the Shipping Act. They made specific factual allegations about things, as Judge Wilkins pointed out, that are distinct from or peculiar to the Shipping Act. Well, let me hear your response to the argument made by your friend on the other side, which is that, like, if you look at paragraphs 98 and 100 of the verified amended complaint, where they say, you know, there's this widespread practicing of coercing the payment of these surcharges and forcing people to obtain space on the spot market. They say that ultimately, those are contractual claims because the basis of the claim is that, rather than honoring the service contract, you're forcing us to use these other avenues. So, this is still a inherently contractual claim under Cargo 1. Why isn't that right? I think it's not right, Your Honor, because the claim itself is, as I think you've noted, built on practices that go beyond. I mean, that's just not an element of a breach of contract claim, although those claims do vary by jurisdiction, and it would depend on an analysis of- Is that the unreasonable preface and advantage? That could be, Your Honor. I think here- That's 4-104-89. So, that's clearly within the statute. I mean, some of these things are clearly going to emanate from what did you do under the contract, and you could end up having practices that the commission has said in Cargo 1 or within its jurisdiction, unfair and unjustly discriminatory practice. Well, that may start with what you failed to do under the contract. It doesn't make it inherently a contract claim. It makes it a Shipping Act claim. You failed to do what and as far as evaluating practices, those practices include relations that Mediterranean may have had with other shippers, and that's the basis for the discovery about matters that go beyond the specific contracts and relationships involved here, because under the statute, that's part of the analysis. I have a question about sort of the practicalities and, I guess, what is effectively claim splitting. If- I thought I heard you say that it's only necessary to sustain jurisdiction with respect to one count to sustain the ALJ's restriction to adhere the case, and I read Cargo 1 otherwise, that it's looking claim by claim and saying, well, the claim under what is now the 40502F, you know, no, the claim that is under the provision that says, breach of contract is a breach of the statute, that that can't be heard by the commission, even if it's packaged in a complaint with other claims that can, but I thought I heard you say otherwise, and the whole thing seems odd to me, because it seems like in many cases you'd have therefore two different proceedings. Your Honor, I don't think we read it that way. I think in this case, there are five distinct claims, even though they may have some things in common, but the five distinct provisions of the relevant part of the Act, and that's the four under section 41-104 and one under section 41-102. And this, I think it's the 41-102 count 2, no, 41-104A2A, which is alleging the Mediterranean provided service not in accordance with the service contract. You know, Congress is basically writing contract violations into the statute in that provision, and then Cargo 1 comes along and seems to say, no, no, if it's in effect really just a contract claim, it's out, and what's your position on a case that includes, just put this case aside, because there's merits arguments about what is and isn't a valid claim, but if there are valid claims under the provisions that Judge Edwards is talking about, about unreasonable refusal to deal, let's say, or undue or unreasonable advantage, apart from a breach of contract, those are under the commission's jurisdiction. I don't hear anybody, at least in general, to be disputing that, but do you dispute that a claim under 41-104A2A is exactly the current provision that the claim in Cargo 1 that was held not to be the commission's jurisdiction is the analog to that very claim? I do believe that is the basic claim that was being, that one of the five claims, that is one that was being discussed. I felt what happened in Cargo 1 was they said we can't hear that claim, and they remanded other claims, and I guess the question is, if that's right, why is it, Judge Edwards' decision that it could hear that claim, not purporting to apply Cargo 1, but nonetheless saying, well, this is under the Act? I think there is room to read it a little more broadly, Your Honor. I mean, what it says specifically is provide service in the line of trade that is not in accord with rates, charges, and so on in a service contract entered into under the chapter and filed with the commission. So I understand the idea that, like, that reaches claims where the contract hasn't been properly filed, but I think there is room to read it more broadly. There may be some tension there with Cargo 1, but I think the idea was that this is basically at the motion to dismiss stage, and it did seem potentially viable. I'm not following that. How is it different? I think it's different in that it's not literally a breach of contract claim. It's providing service in the line of trade. It's not in accord with the contract. Granted, there's an enormous Provide service in the line of trade is not in accordance with the terms of a service contract entered into under Chapter 405, and I think that is the exact provision that was at issue. The precursor of that provision was what was at issue in Cargo 1, and I didn't see, with respect to that, any engagement by the ALJ or the commission besides Cargo 1 that doesn't engage with the reasoning of Cargo 1 that those kinds of claims are not under the jurisdiction. Your Honor, I think you're probably correct that there was not a substantial engagement with that issue. Or really, to be fair, any engagement with that issue? I think, again, looking at all the claims, all five claims, in this case, if any of them are troubling, I do think that even one, such as 401 and 102C, is sufficient to sustain the decision here. How is that the case if the default judgment is entered as a sanction and the relief is based on all five counts? But what if the ALJ was wrong to find, you know, two of the counts within the jurisdiction of the commission? Wouldn't the relief or the remedy that the ALJ entered need to be set aside so that the ALJ could reconsider the relief based on the counts that are properly before it? Your Honor, I think that the basis for the default was conduct that would be properly sanctioned even if only one claim had been made. That's the basis for the basic decision for default. If you're referring to the reparations, I think that's appropriately upheld even based on one claim because each of these claims is based, as my understanding, on the entire course of conduct alleged. So I'm not aware of a clean division where you could say, oh, well, claim one was only about one-fifth of the activity in question. In fact, these are overlapping claims. And my understanding is, for example, count one related to the entire course of conduct alleged. So not only would it support entry of default, just that one, but also the reparations awarded, which go to the overall conduct complaint, the course of conduct. So I think that's why each of them encompasses the whole thing. And each would be sufficient to sustain default because you can't engage in the kind of activity and really a lack of respect for the orders of an administrative law judge without some sort of consequence. And the agency here concluded after Mediterranean had been given at least three chances to comply that those orders had to mean something. So on my question about claim splitting, do you disagree with the way cargo one treated the contract claim, effectively contract claim under AQA and the discrimination or inconsistent treatment claims? When I read cargo one, what I take away from it is that the same plaintiff would have to go to a court with a contract claim and go to the commission with a statutory claim. Is that your understanding? Yes, Your Honor. And I think that that does commonly happen. I believe it's happened in this case or at least in arbitration, which is proceeding. And then is there offsetting of overlapping relief? You've also just asserted that the relief is 100% under all the different claims. Right. Therefore, whoever the arbitration yields relief, they're not going to get double. I think it would be appropriate for each proceeding to take account. I mean, if you're at contract damages or reparations under our statute, I do think it would be appropriate if the idea is to make a party whole, a compensatory approach. I do think it would be appropriate, whether for the commission or for some outside tribunal, to take account of the extent to which a party may have already been made whole. And is there a claim preclusion? So if the plaintiff wins in... Well, let's say if the plaintiff loses before the commission, does that prevent any arbitration from going forward? I would not think so, Your Honor, unless... That's an interesting question. I guess I don't know. So the plaintiff effectively gets two bites at the same apple. The plaintiff loses in arbitration. Is that preclusive of the commission? I would doubt it, Your Honor. And I don't think... It's not come up? It's not. I'm not aware of it. It's at least... It's not the same apple, right? The breach of contract apple is different from the shipping act, statutory claim orange. There may be, or perhaps there... You correctly argued that they're actually different packaging for the same follow act. And that makes sense in civil procedure terms, one transaction recurrence. You can seek to recover for the harm you suffered from it under a contract theory. You can seek to recover for the harm you suffered as a result of the transaction occurrence under a discrimination theory or et cetera. But in the real world, the thing that happened and the thing that harmed you is one transaction recurrence, which is why it surprises me. I mean, I'm not sure that if I were the commission, I would decide cargo one the way it was decided in part for this reason. I think that there are distinct claims and it may be that when you get to the damages stage, accounting would have to be made for what might have happened in another setting. But I don't think there'd be preclusive effect for distinct claims. One being... In the courts, there's a preclusive effect. No matter how you name the claim, you look at the underlying transaction recurrence. Then there are these issues of, well, could you have raised the claim in that form? And if you can't, then sometimes that's split up. But it's a very strange system to embrace. It tends not to be particularly functional or efficient. Your Honor, I do think that there is an approach or a test that's emerged from cargo one anchor shipping. And I would direct the court's attention, especially to anchor shipping, because I do think that has a lot in common with this case is the ALJ relied to a significant extent on the factual and legal similarities with anchor shipping, which is six years later than cargo one. But I do think that the analysis about whether claims have elements that are peculiar to the Shipping Act or distinct from recent contract claims is the prevailing analysis and the one that the agency has applied. So that, I think, is the one that was applied here, and that's appropriately applied. But was it appropriately applied here? Are there any complaints that are alleging a violation of the act, citing a provision of the act, that the commission nonetheless cannot hear because they are inherently breach of contract? As long as the act is cited. I mean, that seemed to be the view of the commission and the ALJ in this case. Your Honor, I don't think it was just cited. I think it was of course, alleging a violation of a specific part of the act, citing that, not saying it's a breach of contract and here are the elements of a breach of contract. So of course, starting with that. But what happened here, I think that where that line is may vary in different cases, but what happened here is the claimant went far beyond merely reciting and stopping. They made specific factual allegations about practices and activities that would not really be elements of breach of contract claims. I understand it. They go beyond it. They're peculiar to the act, like coursing surcharges, like some of the other elements that Judge Wilkins read from that part of the complaint. So I think in this case, wherever that line is, and words like inherently perhaps are not as clear as they might be, but in this case where there were specific allegations in MCS's complaint, which go beyond contract claims, go beyond merely parroting elements of the act, I think it was appropriate to find jurisdiction for those claims. I'm just, again, circling back to count one, violation of 41104A2, the conduct constitutes provision of service not in accordance with the rules and practices contained in the respective service contract. Is that something other than you acted in a way not consistent with the terms of the contract? I think it can be read as creating some space, I would read between a breach of contract claim, again, which is very, I think, dependent on the specific jurisdiction. So in the abstract, a breach of contract claim is, I think, is analyzed somewhat differently in different jurisdictions. But I think there is potentially some room in that language. I mean, that's not just contract laws very specific about what constitutes- I'm not following. I mean, a concrete example, because if you say to me, I'm going to sue this carrier for providing service not in accordance with the service contract I entered into with it, and that is a violation of 41104A2, that is, as far as I can tell, and I'm, as I said, no specialist in the Federal Maritime Commission statutes or decisions, as far as I can tell, that is the same claim that the Commission in Cargo 1 said, no, no, that is excluded under subsection F of 40502. Numbered differently then. I'm sorry? It was numbered differently. Yes, that's right. There was a recodification. I believe it is essentially the same claim. And so I think in this case, there was a view that there was room for a claim based on the allegations in the case. But I would agree that there's a significant overlap there, obviously, between that language and a breach of contract claim. Sorry, give me one chance to explain to me. I don't, I really don't want to like, you know, just hassle you about it. But what is it about it that goes beyond just a contract claim? What is it about how that's stated? Well, I think service in the line of trade implies a broader course of conduct, simply breaching a contract in a sort of defined way. That's one basis. And so if your conduct is not consistent with the elements listed in the service contract, I think that's a potential distinction. Let me add on to this question to see whether or not you think this is an answer or not to my colleagues. On page 36 in cargo one, this is why I started with you. There's a whole lot of debate we've had today about the reach of cargo one. But this is the page where the commission is very clear in saying what is and is not covered by its decision and making it very clear where the commission has jurisdiction. Unfair or unjustly discriminatory practices. We've been around that. They say that's clearly an area here. And that's part of what this complaint is about. Undue or unreasonable preferences. That's clearly been covered today. Undue or unreasonable prejudice or disadvantage. That's clearly been covered by what we've covered today. And then there's one regulations and practices. What does a regulation and practice mean? Now, is that answering what Judge Pillard? Because that's one of the things that commission says is covered. Your Honor, I think it is possible to interpret that as having a relationship or overlap with providing service. Providing service implies a more general... In other words, if we look to see and you're just basically doing bad things all over the place, we can catch you this way too. I'm being serious. Is that what we're talking about? No. You just have a routine. We're only trying to enforce the law as written. Not looking to find... No, no, no. This is the commission's take on it. So I'm trying to get your understanding as to what they mean when they include... I'm sorry. It's not unreasonable prejudice and disadvantage. It's reasonable regulations and practice. That's the last category in this list where they're saying, these are all things that are covered. And it's within our jurisdiction. Reasonable regulations and practices. Is there something there that doesn't work for you in answering what Judge Pillard is saying? Asking? I may not be completely following what you're saying. Can you look at the passage? Do you see Cargo 1? I don't actually have that case right with me, Your Honor. But I think that wasn't intended, I think, to be an exclusive list of things the commission has jurisdiction over. I know we're trying to at least get to a point where we agree on some things. So one thing we ought to be able to agree on is what emanates from this list. This is the commission's list in Cargo 1, which has been the subject of five hours of debate today. And they list five things here. All I want to know is what you think they meant, the last thing they list, and just in reasonable regulations and practices. I think that, Your Honor, that was likely a reference to 41102C, which talks about the need to have common carriers essentially must establish and just in reasonable regulations and practices. So I think it's a reference to what is currently, although perhaps not at the time of that decision, what is currently at 41102C. So I think there the commission was going through a lot of the same provisions at issue in this case and saying there certainly is jurisdiction for that claim, 41102C. And then you also have language from 41104A5 and 9. I think some of the other phrases you used were what a person hears. I didn't use them. I'm just citing them. I'm trying to address the other side's suggestion that none of what's here is subject to commission jurisdiction, which seems to be just patently wrong in light of what the commission says on page 36 of its own opinion. They list it. The only category I can't make complete sense of is the very last category and just in reasonable regulations and practices. And I was wondering if you knew what they might have meant by that. The rest are self-evident and they seem to be all covered in this case. Yes, Your Honor. And I do think that language that you're asking about is cited is directly in 41102C currently. So I think that may be the answer to that. I have a question about the commission's first order suggested that Mediterranean had shown bad faith by not immediately appealing the ALJ's discovery orders. But didn't the commission's order elsewhere acknowledge that Mediterranean had no right to appeal an unfinal ruling like a discovery ruling? I hope the commission didn't say one. I don't think the commission said one failure to appeal was it's by itself bad faith. No, what they said is evidence of bad faith and I was stunned by that. I think they do have a right to seek appeal. And here they had three chances to at least seek to appeal the interim orders under 46 CFR 502.221. You can ask an ALJ to appeal a non-final order. And if you can make a showing, then that does happen. And here, I think they would have had a fairly strong argument. If they genuinely believe that they were prevented from complying by a foreign blocking statute, I think that would be a pretty strong argument that the commission should have heard that. So it's effectively like seeking a certificate of appealability in court. You have to get permission to do it. You do have to get permission, but I don't think it's like seeking cert. I think it's something that would be likely available in a case like this if they could demonstrate. I think they would have to make some demonstration. I can't predict how it would have gone. Some factional legal demonstration that they did in fact face that kind of peril. And they wanted to respect the agency. They didn't want to simply ignore the agency's orders three times in a row. They wanted to give the agency a chance to determine this issue. So they could have sought to appeal that under that regulatory provision. It could have been seen as procedurally obstructive to not wait until final order and appeal then, which is the ordinary court when one is in an adversary dispute resolution form. Is it the commission's position that seeking to employ the Hague Convention is a sign of bad faith supporting default judgment? Not in isolation, Your Honor. But I think if you look at how federal courts evaluate requests to proceed under the convention, you do have to make a showing that it's necessary. And that showing wasn't made here. I mean, if you look at the cases, the Illuminati networks and Al-Fada cases that the ALJ cited, there has to be some showing of necessity with specificity, specific documents or categories of documents that you can't produce. Not a general refusal to proceed in 14 categories sustained over three different orders. And so that entails, I think, and we can hear from Mr. Longstrap on this rebuttal, but I think that entails disagreeing with his way more categorical position, which is that it doesn't matter the nature of the information that's being sought, if it's being sought by a governmental enforcer from a foreign country, that it cannot be produced without resorting to hate. And I don't see any authority about Swiss law in the record, other than Mediterranean's own authority. So I don't see any authority about Swiss law in the record supporting a more granular, nuanced view about what would require resort to hate. I think here, what the party doing the seeking is the administrative complaint at MCS. The commission is in the nature of a court, just like all these other cases, like the two I just mentioned, those are courts deciding private disputes, as I understand it, where one party was seeking discovery. And it's true that a private party complaint discovery could potentially entail the need to resort to those procedures. But I understand that the requesting party is not like a prosecuting authority. It's like in the nature of a judicial proceeding. It's in the nature of a judicial proceeding. And the distinction that I hear Mr. Longstreet making is pre or extra judicial sharing of information versus judicially required. And I mean, consider that ALJ's signature and seal were on the hate request. Yes, that's right. But again, I think that's also true of the cases where the federal cases that say you have to show that it's necessary in order to push out of the ordinary U.S. civil discovery procedure. And the Supreme Court's decision says, if there's a risk that you'll be criminally prosecuted, that is a component of whether it's necessary. How can we say- Which wasn't the case here. They're saying, yeah, that we're going to criminal prosecution under 271. Yes, right. We're saying we don't think they demonstrated that risk. And we also don't think they demonstrated a factual need under, certainly not at the time they were before the commission for the ALJ. And I think that's part of the analysis as well. They haven't demonstrated with specificity what materials they can't provide, which apparently were providable for 40 years by major carriers in these proceedings where we never saw this kind of argument. They haven't demonstrated- From SWIFT defendants? In general, from SWIFT, from anyone. I mean, the reason I ask is because SWIFT has information privacy laws that are second to none. Understood. It's part of their UNESCO world heritage. But in general, we haven't seen that. And I think they needed to do more on that. In order to justify it under the procedure that federal courts follow. Yeah. I think I found the answer. I'm sorry. I pushed hard and didn't look carefully. The reference, I'm just really trying to tie this to cargo one, because there's certain things I got to get clear in my mind. The commission gave us an answer on page 36 as to what's clearly within their jurisdiction. So whatever confusion there is from the prior pages is washed away. And I asked you about the last category, and that is 41102C, common carrier, marine operator, or ocean transportation intermediary may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property. And I gather that's among the complaints in this case or not. Yes, that's right, Your Honor. That's right. So everything that's listed in cargo one that the commission has clearly said is within their jurisdiction is among the complaints that have been raised against the other side. Is that right? I believe that's correct, Your Honor. All right. Thank you. All right. Mr. Reynolds for MCS. Good morning. Thank you. May it please the court, Matthew Reynolds for the intervener in the complainant below MCS Industries, Incorporated. MSC's challenge here is premised on an intentional misunderstanding and cabining of the causes of action that MCS Industries brought in its original complaint and its amended complaint in this administrative proceeding. And it's interesting because that same cabining, that same misinterpretation of our claims, is what drove the very discovery deficiencies that led to the order granting our motion to compel and eventually led to the default in this case. MSC clearly would very much like our causes of action to be nothing more than breach of contract claims. They are not. One of the reasons I know they are not is that I am currently litigating breach of contract counterclaims against MSC in a separate arbitration that, as has been discussed in the papers, is proceeding in parallel with this proceeding. I'm sorry to interrupt you. Can I ask you, on the discovery issues, we have very broad, so far very broad positions, pro and con. Can you give me your most compelling point that, if you could only have, you know, three categories of information that you think you're entitled to, can you give me a little bit of granularity with respect to what are they and what claims do they go to support? Absolutely, Your Honor. I think that the main cause of action that is at issue with respect to these discovery deficiencies is the first count of our complaint, which was under 46 U.S. Code 41102C. That is the unjust and unreasonable practices claim. As counsel for the FMC has indicated, that claim is the one that I think most explicitly and clearly goes far beyond the sort of plain, vanilla breach of contract concepts that MSC's counsel has discussed. By regulation, claims under 41102C are held to a heightened pleading standard, and they are held to a standard where you have to establish a practice that occurs over time. It can't just be a claim that one carrier did something wrong once to one complaining shipper. It's a pattern or practice standard, and so for that reason, many of the discovery requests that MSC refused to comply with went to evidence and documents, communications, and data that would go to prove our 41102C claim under that heightened pleading standard, under that standard that almost by definition would require more than just discovery about MSC's specific interactions with MSCS industries in isolation. So I think that would be the strongest claim. It's not actually a heightened pleading standard. It would be on pleadings. It's about evidence. You're saying it's a challenging item of proof or element of proof. Yes, Your Honor, that is correct. The FMC's regulations have imposed a heightened burden of proof for claims of that nature, specifically to separate them from sort of the garden variety type breach of contract claims that we've been talking about earlier today, and so for that reason, many of these categories of discovery requests sought data and information not just about MSC's dealings with MCS industries during the relevant time period, but also its dealings with other shippers, both on a spot market basis and on the basis of their service contracts, because that evidence would have been necessary for us to meet that heightened burden to prove count one of the complaints. And the particular evidence? The particular evidence would have been information about peak season surcharges, for example, that were imposed on a divergent basis among different shippers during this time period. I will also note, with regard to the earlier question about count two of our complaint, Your Honor asked if there were any ways in which our count two, which is closest to sort of a breach of contract concept, would be distinct from that. The peak season surcharges, I think, are a good example of that. Those surcharges, as alleged in our complaint, were extra contractual charges that MSC sought to coerce from MCS industries in order to carry its cargo. That would be an example of conduct in the course of providing service in the liner trade that is not consistent with the terms of the service contract. And I know you breached this, but doesn't your contract with Mediterranean allow them to request surcharges and void the contract if you refuse to pay them? Your view is they wanted to charge surcharges, but they didn't want to have to void the contract? It allows them to request it, but it requires mutual agreement on the surcharges in order for them to be charged. And so I'm giving that as an example of how that extra contractual charge would take this outside of the pure breach of contract concept that we're talking about and put it within the provision of 41104A that Your Honor asked about. You agreed to a second Hague Convention letter. How can you now defend that having asked for that and insisted on it, but Mediterranean's insistence on that is somehow unjustified delay supporting default? I think, Your Honor, that the ALJ was not wrong to accommodate MSC's request for Hague Convention proceedings, but as the ALJ, I think, correctly determined, those proceedings were not, in fact, necessary. There was, of course, no risk of criminal jeopardy in this administrative proceeding. And so relying on federal case law, relying on authority that the ALJ appropriately looks to, the ALJ concluded that it was unnecessary. And so although we were perfectly happy to go along with their recommendation, when it was determined by the ALJ that that procedure was unnecessary, of course, our view was they should produce discovery. That was our view from the very of the case, that they should simply produce the discovery. All right. Thank you, Your Honor. Thank you. You want the time reserved, Mr. Longstreth? You have three minutes. Just some very quick points. First of all, on the A2A claim, the breach of contract claim, the point I'd like to make there is, and I think even my friend, Mr. Reynolds, says that's closest to breach of contract. It's really indistinguishable from a breach of contract. But the point I wanted to make was that Your Honor is 100% right. The ALJ did not engage with that at all. Even though Cargo 1 says that that's a claim that should be presumptively outside the commission's jurisdiction, the ALJ made no distinction between that claim and the discrimination claims and the others that we're talking about. So we think at the very least, there's just a complete failure of the ALJ to explain how she was applying Cargo 1 in this case. It may very well be that if the commission were to unpack this and look at the allegations, they would agree with Judge Edwards that these fall within. I think if they listen to this argument, the commission will probably come out that way, as I hear it, that the way the panel comes out. But the point is, the commission has to make that decision. Judge Edwards can't make that decision. So we would mandate the commission to do it? I would think you'd have to, because they didn't discuss A2 at all. And A2, as I was trying to say, and I really apologize for being impatient on that, but A2 is different from these other claims because A2 was distinguished in Cargo 1 itself. That's something that's going to be outside their jurisdiction. And do you agree with Mr. Summers that claim splitting is just par for the course in these? It is. And this is one of the reasons why the jurisdictional limitations have to be enforced, because otherwise, we've got a case now for another client, we're in three different forums, and they came to the FMC a year and a half after filing a breach of contract claim, and after filing an arbitration claim, because they're open for business. I'm sorry. I'm sorry. Believe me. Jurisdictional limitation in Cargo 1 doesn't make any sense. Do the whole thing here, and then if everybody's satisfied, done, why have a court case? Right. At the very least, I think they have to be serious about imposing and looking at the complaint to see what's really at issue here, so we're not dragged to three different forums. And they did not do that here. They didn't even try to look at when this is essentially contractual. Yeah. The way that your brief argues, at least in the opening brief, you say that there's no jurisdiction over any of the five. Right. I don't see where you make the argument that if there was jurisdiction over one, but the other four, there was not jurisdiction, you still have to remand. I don't see that argument in your brief. And we do have a harmless error rule on in administrative cases as with everything else. So, I'm trying to understand if we were to conclude that the commission perhaps got the analysis wrong as to one or more accounts, but they got the analysis correct as to at least one, why isn't that error harmless here? I think with respect to the issue we're talking about here, the error that's most obvious with respect to A2, where the commission actually said these are usually not in our jurisdiction and the ALJ didn't discuss it at all, also applies to the other claims as well, because she likewise did not discuss those. Now, as I said, it may very well be that those are harder questions, and Judge Edwards actually thinks they're easy questions, but whatever they are, they're questions the commission did not address. And it didn't address them for any of the claims. It just says data. My question to you is, if I disagree with that, and I think that they did address it maybe as the count one, but I agree with you that they didn't address it as the counts two through five, what should I do? Well, I think you have to look and see whether the commission or what else. I think one of the reasons we didn't talk about claim splitting is the commission didn't talk about that. The commission didn't say, well, we would do this. So Mr. Summers is saying, well, if we lose one claim, we lose them all. The commission didn't say that. It just defaulted us generally. So I'm not sure that that would really be an issue. One thing I did want to say with respect to Judge Pillard's question, when she's trying to unpack what discovery went to what issue and what didn't, again, something the ALJ made no effort to do, the example that Mr. Reynolds gave was practices. Well, we can't show a practice without asking for discovery about every other shipper you dealt with. And I think that's a good example of the abuse of discretion, which is that there are plenty of sanctions in default other than just losing. And one sanction here, potential sanction here on that would have been, okay, you can't challenge that it was a practice. We'll show it in our case because we think they can't show it in their case. So we don't have a practice if they can't show it in their case. But we could say that could be one of the things you could do as a sanction, say, look, if you're really getting into it, okay, if you show it happened in your case, because you haven't provided this other evidence, you can't challenge that it wasn't a practice. That element is taken as conceded. And that's the kind of analysis you generally expect in the default, okay, because we did produce a lot of evidence, okay, a lot of discovery voluntarily. And we were treated as if we had produced none. You go back and look, well, what did they produce? What didn't they produce? How does that tie to the claims? Speaking as a newcomer to the case, I am really baffled why you're fighting the production of any of the supplemental information. I just don't understand the business decision. I don't understand if there's something to get out of this case. And I think that may be not far from where some of the decision makers in the commission. Okay. And that's the third point I wanted to make, and then I'll sit down. So I'm glad we're on the same page. The way that I know, and I can't get in too far into privilege discussion, but the way I know we looked at it and the way Swiss Council looked at it is, is that the act of production from Switzerland, in other words, they're directing it, you know, legal offices in Switzerland, our advice on this is from Switzerland. So if we direct that production from Switzerland, it doesn't really matter if, well, maybe we could access the document from this or there. And they did, I mean, I understand that the commission was skeptical, and I understand my friends on the other side are skeptical, but they were, maybe there's a small risk of criminal prosecution, but, you know, general counsel is not going to tell his, you know, small risks, particularly when there's a procedure available that removes the risk. And, and was I correctly characterizing your position in question in the other council today, that your position is that it's any, any information can't be provided from Switzerland because it's under the compulsion of an actor of a foreigner. Right. It's under the compulsion of an actor and decisions to make in Switzerland are the ones who have to decide whether to count it. This is just speaking for me. We have not. I understand. But I would urge you to ask your client and, or your Swiss co-counsel, the question that I had about whether you could voluntarily do anything. And others have said that, you know, we've got this compulsion order, but could, could we do it under protection? Could you sidestep and say, we, we're not doing it because of that. We want to have, we want to bring this case to some kind of- Is that something you want, is that something you want us to file supplemental advice on, or is that just- It's literally just my- Just your thoughts. And it doesn't speak for the court. I understand. Thank you very much. Again, I appreciate it very much. And I apologize for any heat. Thank you all. Case is submitted.
judges: Pillard; Wilkins; Edwards